# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | |
|---|---|
| MARION GORDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 09-CV-4065 |
| FEDEX FREIGHT, a corporation, as ) | |
| parent of or affiliated company of FEDEX ) | |
| NATIONAL, LTL, a corporation, and ) | |
| JEFF MALLONEE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## O R D E R  &  O P I N I O N

This wrongful discharge action was originally filed in the Circuit Court of Rock Island County, Illinois and was subsequently removed to this Court pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332. Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 15). For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

### Plaintiff's Position

Plaintiff began working for FedEx National LTL, Inc. on September 4, 2006. From September 4, 2006 through her termination on November 11, 2008, Plaintiff was employed as an Over, Short, and Damaged ("OS&D") clerk at FedEx National's service center in East Moline, Illinois. (Doc. 15-1 at 6). For her entire period of

---

[1] These background facts reflect the Court's determination of the undisputed facts, unless otherwise noted. Facts that are omitted are immaterial; if an included fact is immaterial to the Court's determination, this will be noted.

employment with FedEx National, Plaintiff reported to Jeff Mallonee, who was one of FedEx National's Service Center managers. (Doc. 15-1 at 6). In October of 2008, in addition to Mallonee, the East Moline service center employed two other managerial employees, both operations supervisors. (Doc. 15-1 at 6).

### The Decision to Eliminate Plaintiff's Position

In October 2008,[2] FedEx National was in the process of implementing a reduction in force due to a downturn in business which involved multiple position eliminations across the country. (Doc. 15-1 at 7). The reduction in force planning had initially identified certain service centers for staffing reduction based on their freight levels. (Doc. 15-1 at 7). Local and regional management teams were then directed to make the decisions about which positions would be eliminated to achieve the desired staffing reduction. (Doc. 15-1 at 7).

Shortly before or on October 15, 2008, Mallonee went to lunch with his direct boss, FedEx National regional manager Jeff First, and FedEx National managing director Butch Davis (to whom First reported). (Doc. 15-1 at 7). At this lunch, Davis and First discussed the reduction in force and advised Mallonee that the East Moline facility had been identified as a service center that would be affected by the reduction in force. (Doc. 15-1 at 7). Davis instructed Mallonee and First that they needed to develop a plan for eliminating one full-time position at East Moline. (Doc. 15-1 at 7). At this lunch meeting, Mallonee, First, and Davis discussed the needs of the East Moline service center to determine which position could be eliminated. (Doc. 15-1 at 7). They agreed that the OS&D clerk position would be the most

---

[2] Unless otherwise noted, all dates are for the 2008 calendar year.

appropriate, because it was the only full-time hourly office position at the East Moline Facility, and its elimination would still leave two supervisors in the service center. (Doc. 15-1 at 7). This would allow one supervisor to have responsibility for opening the facility in the morning and one for closing the facility at night, and would allow for adequate supervision when Mallonee was not present at the East Moline facility. (Doc. 15-1 at 7).

Mallonee, First, and Davis intended for the supervisors to absorb most of the OS&D clerk duties following the elimination of the position. (Doc. 15-1 at 7-8). One of the operations supervisors, Carol McDaniel, had performed the OS&D duties previously, and Mallonee, First and Davis felt that she could again perform these duties in conjunction with her supervisor position. (Doc. 15-1 at 8). OS&D clerk was the only full-time hourly office position in the East Moline service center, and Plaintiff was the only OS&D clerk in the facility. (Doc. 15-1 at 8). On the afternoon of October 15, Mallonee sent an e-mail to Davis confirming the plan to eliminate the OS&D clerk position in the reduction in force and inquiring about when the elimination would be implemented. (Doc. 15-1 at 8).

<u>Plaintiff's Injury</u>

On October 14 Plaintiff tripped and fell over some wood in the parking lot after she returned from lunch, injuring her arm and incurring scrapes and bruises. (Doc. 15-1 at 8). Plaintiff was taken to the hospital where she received medical attention and was diagnosed with a bruise. (Doc. 15-1 at 8). Plaintiff was cleared by her treating physician to return to work the next day. (Doc. 15-1 at 8). Mallonee then picked her up from the hospital and drove her back to the service center, from

which she drove herself home. (Doc. 15-1 at 8). At this time, Plaintiff did not believe she would miss much work and she told this to Jeff Mallonee. (Doc. 15-1 at 8). In the morning on October 15, Plaintiff told Mallonee that she was going to try and make an appointment with her family doctor because her arm still hurt. (Doc. 15-1 at 9). Plaintiff remained off work for the rest of the week after October 15. (Doc. 15-1 at 9). On Monday, October 20, Plaintiff provided Mallonee with a doctor's note that she would be "off work until further notice." (Doc. 15-1 at 9). About ten days after Plaintiff's initial injury on October 14, she learned that she would need surgery and relayed that information to Mallonee. (Doc. 15-1 at 9).

<u>Informing Plaintiff of the Termination Decision</u>

On or about November 4, FedEx National human resources personnel were finalizing the plans for communication of the reduction in force information across the company. (Doc. 15-1 at 10). The company intended to notify and separate all of the employees whose positions were being eliminated on one day. (Doc. 15-1 at 10). However, employees on medical leave of absence would not be separated until they returned from leave so as to avoid their medical benefits being cut off while they were on leave. (Doc. 15-1 at 10). On or about November 10, Plaintiff called the service center and spoke to supervisor Carol McDaniel to inform her that she would be returning the next day with a doctor's release. (Doc. 15-1 at 10). The following day, November 11, when Plaintiff arrived at work, Mallonee and Human Resources Manager Roger Maco met with Plaintiff and advised Plaintiff of the decision to eliminate her position, effective that day. (Doc. 15-1 at 10). Supervisor Carol McDaniel absorbed Plaintiff's OS&D duties until McDaniel resigned in July 2009,

at which time another part-time clerical employee began performing the OS&D clerk duties. (Doc. 15-1 at 10).

## Plaintiff's Workers' Compensation Claim

Plaintiff filed her worker's compensation claim on December 15, more than one month after she was informed of her termination from FedEx National, and approximately two months after the decision to eliminate her position was made. (Doc. 15-1 at 10). Prior to filing her worker's compensation claim on December 15, Plaintiff never informed anyone at FedEx that she planned to file a workers' compensation claim. (Doc. 15-1 at 10). Prior to Plaintiff's actual filing of the workers' compensation claim on December 15, Plaintiff took no steps towards filing that claim. (Doc. 15-1 at 10).

## Plaintiff's Wrongful Termination Suit

On July 23, 2009 Plaintiff filed suit for wrongful termination in the Circuit Court of Rock Island County, Illinois against FedEx National and Jeff Mallonee. (Doc. 1). Defendants timely removed this case and Plaintiff subsequently amended her complaint to add FedEx Freight[3] as a defendant. (Doc. 1; Doc. 7). Plaintiff alleges in her Amended Complaint that FedEx National and FedEx Freight[4] (collectively, "FedEx") fired her in retaliation for pursuing a workers' compensation claim.[5] (Doc. 7).

---

[3] FedEx Freight is the parent corporation of FedEx National. (Doc. 15-1 at 3).
[4] Mallonee was not named as a defendant in the workers' compensation retaliation claim.
[5] Plaintiff also alleges as separate claims that FedEx and Jeff Mallonee fired her in violation of the Family and Medical Leave Act ("FMLA"). However, in Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff concedes that summary judgment is merited with respect to the FMLA claims. (Doc. 16 at 18).

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores,* 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.,* 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison,*

---

Consequently, the Court hereby GRANTS partial summary judgment in favor of Defendants on the FMLA claims and will not address them further.

423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson,* 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

**ANALYSIS**

In general, an employer may terminate an at-will employee for any reason or even for no reason at all. *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994). The Illinois courts, however, have recognized the tort of retaliatory discharge as an exception to this general rule where an employee is terminated for exercising his rights under the Illinois Workers' Compensation Act. *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 421 N.E.2d 876 (Ill. 1981).

To succeed on such a claim, the plaintiff must demonstrate: (1) that she was an employee of the defendant prior to her injury; (2) that she exercised a right guaranteed by the Illinois Workers' Compensation Act; and (3) that her discharge was causally related to her exercise of that right. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 384 N.E.2d 353, 357-59 (1978). The parties do not dispute that Plaintiff was employed by FedEx National before and at the time of her injuries, nor that Plaintiff filed a workers' compensation claim based on her injuries. Summary judgment in this case revolves completely around whether Plaintiff has demonstrated a genuine issue of fact concerning the necessary causal relationship.

At her deposition, Plaintiff repeatedly claimed that she was fired for filing a workers' compensation claim. *See* Doc. 15-3 at 11 ("I was terminated because I *filed* a workmen's comp claim.") (emphasis added); Doc. 15-3 at 11 ("And the *filing* of the workmen's comp claim is what made him terminate me.") (emphasis added); Doc. 15-3 at 15 ("Why was I terminated? Like I said, because I *filed* the workmen's comp

claim.") (emphasis added). Thus, it appears that Plaintiff's theory is that she was fired in retaliation for filing the November 2008 claim for benefits. Of course, such an assertion would be impossible to prove because Plaintiff did not file this claim until after she had already been terminated, and thus she could not have been terminated as a result of her filing the claim. *See Roger*, 21 F.3d at 149; *Sweat v. Peabody Coal Co.*, 94 F.3d 301, 305 (7th Cir. 1996). Nevertheless, because the language of the Amended Complaint states that FedEx fired Plaintiff because "she was pursuing a worker's compensation claim," the Court will assume, for summary judgment purposes, that Plaintiff's theory of the case is that she was fired for pursuing, rather than filing, a worker's compensation claim.

The Illinois courts have long recognized instances of retaliatory discharge not only where the plaintiff is fired for filing a workers' compensation claim, but also where the plaintiff is preemptively fired in order to prevent her from filing a claim under the Act. *See Richardson v. Illinois Bell Tel. Co.*, 156 Ill.App.3d 1006, 510 N.E.2d 134 (1987); *Wolcowicz v. Intercraft Indus. Corp.*, 133 Ill.App.3d 157, 478 N.E.2d 1039 (1985). However, "Factual support that the employer was informed or in some way found out about the plaintiff's *intent to pursue* relief under the Act is essential to a retaliatory discharge action." *Roger*, 21 F.3d at 149-150 (emphasis added).

After reviewing the Record, it is clear that Plaintiff's claim fails even under this more expansive reading. Plaintiff's only piece of evidence in support of her theory of preemptive retaliation is that Mallonee allegedly told Plaintiff when he picked her up from the hospital, "you are going to be off for a long time." (Doc. 16 at

8

11). Assuming, for purposes of summary judgment, that Mallonee did make this statement, it is clear that he could not have reasonably held such a belief because there was no foundation for it. Indeed, the parties admit that on October 14, Plaintiff was diagnosed with a mere bruise and was cleared with a doctor's note to return to work the very next day. (Doc. 15-1 at 9). Furthermore, at the time, Plaintiff did not think her injuries were serious. (Doc. 15-3 at 21). Additionally, while the Record doesn't indicate at what point in time Plaintiff resolved to file a workers' compensation claim, it is clear that Plaintiff never mentioned her intent to file a workers' compensation claim to anyone on or prior to October 15, when the decision was made to fire her. (Doc. 15-3 at 20). Finally, Plaintiff testified that she had never filed a workers' compensation claim in the past. (Doc. 15-3 at 5).

In light of the foregoing, it is readily apparent that "There is no evidence in the record that [Defendants] knew or even suspected that [Plaintiff] might file a workers' compensation claim . . . Even if, for some reason, [Defendants] had predicted that [Plaintiff] might make a filing that [s]he [her]self had not yet considered making, the evidence does not give any indication that [Defendants] might fire [Plaintiff] in an attempt to prevent [her from] doing so." *Sweat v. Peabody Coal Co.*, 94 F.3d 301, 305 (7th Cir. 1996). Consequently, Plaintiff has failed to demonstrate a genuine issue of material fact concerning whether FedEx's decision to terminate her was causally related to her filing, or even her intention to file, a claim under the Act. Accordingly, Plaintiff's claim fails as a matter of law.

9

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 15) is GRANTED. The Clerk is DIRECTED to ENTER JUDGMENT in favor of Defendants and against Plaintiff. IT IS SO ORDERED.

CASE TERMINATED.

Entered this <u>20th</u> day of July, 2011.

                                              s/ Joe B. McDade
                                              JOE BILLY McDADE
                                      United States Senior District Judge